For the benefit of counsel who may not be familiar with our lights, when the yellow light comes on, you are beginning to use your rebuttal time, and when the red light goes on, your time is expired. We will hear argument first in No. 2007, 3200 Rice v. the Merit Systems Protection Board. Mr. Mellehy, did I pronounce your name correctly? Yes, you did. Very well. You may begin when you are ready. Thank you. May it please the Court, the MSPB had jurisdiction over this case because the Department of the Navy never met its burden of proving that it had designated the Office of Naval Intelligence as an intelligence component of DOD. The Secretary of Defense had to do that, or his lawful delegate. The Deputy Secretary signed the directive that is referenced here, I think. That's correct. You don't contest the delegation to the deputy of the Secretary of Defense, do you? No. You just think that the directive is insufficient. That's correct. First of all, the directive does nothing to say that the delegate of the Secretary is designating that ONI as an intelligence component. It simply lists units that are intelligence components. But more importantly, the law which permitted the Secretary of Defense to exempt the ONI from Merit Systems Protection Board appeal rights was created in 1996. And Section 7511 references 10 U.S.C. 1614. And both were created at exactly the same time. That's eight years after the directive in this case was issued. So, under this court's holding in Sarkowsky, there are several prerequisites that need to be satisfied here. First of all, this is essentially a delegation from Congress to the Secretary of Defense to draw jurisdictional boundaries that the MSBB has. There's a good amount of discretion involved in that decision, and it has to be made with the specific intent of doing so. Mr. Malley? Yes, Your Honor. With respect to the essence of your argument, as I understand it, you're saying because the directive that was published by DOD by the Secretary on April 25, 1988, if that Section 3.4 DOD intelligence components had included for purposes of 5 U.S.C. Section 7511.8, that would be sufficient. No, it wouldn't. What would be insufficient about that? Well, first of all, the directive was, Sarkowsky says that there has to be discretion exercised in terms of specifically intending to exempt the unit from MSBB appeal rights. That couldn't have happened because the legislation authorizing it wasn't even in existence in 1996. So if this directive had been re-promulgated a week after the legislation, that problem at least would go away, I take it? I'm not sure that that is the case. The directive itself simply lists these units. There's nothing in the directive that indicates that it's designating these units as intelligence components. Mike, are you saying that the directive had to use some special language, delegate or designate, rather? Yes. Why was it not sufficient to list them as an intelligence component? Because it's not clear that the, hypothetically, if the directive had been re-issued later, and I assume that's your question, but it has to be clear in the directive that the Secretary of Defense is saying this is exempt, this unit is exempt from MSBB appeal rights. And there has to be some indication that the directive, or whatever it is, is specifically designating that unit as being exempt from the appeal rights, and that that authority is being exercised. Well, Section 7511 says an intelligence component of the Department of Defense has defined in Section 1614 of Title 10. Yes. Because that simply says, as defined. And if you look at 1614, it says the term intelligence component means any of the following. And it lists any component designated by the Secretary of Defense. But doesn't the directive under those two statutes clearly meet that language? I don't think so, because it doesn't say that it's designating the units. It simply lists them as intelligence components. Well, it seems to me to be a little bit hyper-technical. If I were to list, as the people that I've selected as my law clerks for next year, persons A, B, and C, wouldn't I be designating those persons as my law clerks for the following year? You could be. But this is delegated authority to draw jurisdictional boundaries. I think it has to be clear when this delegated authority is exercised that indeed it was exercised. To what degree of specificity would you require it at that point? I hereby designate, on this date, these units as intelligence components pursuant to the authority vested in me under sections 7, 5, 11, and 1614. So you're asking then for the inclusion of those specific sections, as we started off in the beginning. Yes. I said if those sections were specifically included in the directive, you would have no problems with that. Except that I think the directive needs to indicate that the delegate of the secretary is indeed designating, at that point in time, the units as intelligence components. I think it has to be clear that the secretary is designating. Well, if you make a reference to the specific statute of 7, 5, 11, and then 1614, you'd be designating, you'd be identifying it specifically. That's what you're requesting, that there be a specific designation by statutory sections in that directive. Well, again, Your Honor, I believe when I read the directive, I don't necessarily get the impression that that document itself is what has identified the units as specifically designated the units as intelligence components. I get the feeling that maybe there's some other document out there that made an earlier designation, possibly, I don't know. But I just didn't get the sense that the designation was actually occurring. Mr. Manley, I'd like to ask you a question about the other side of this case. Yes. As I understand your argument, you're saying that not only does she have an appeal right from the position that she was in because it doesn't meet the intelligence position exemption. Yes, sir. But even if we disagree with that, she had a vested appeal right because of the position that she was in in the competitive service in, I guess, before 1985 and retained that right. She never waived it or relinquished it. Is that right? That's correct, Your Honor. That is absolutely correct. But she signed a document that clearly reflected that she was moving from the competitive service to the accepted service. And that has the consequence of a loss of appellate rights. Isn't that enough? Well, Your Honor, it had the consequence of losing appellate rights until 1990. In 1990, that all changed. And accepted service folks had appeal rights under the SBB. Certain ones. Yeah. Certain limited rights. And she would have fallen within that category. She would have. She was a person who. No, wait a minute. When you say she would have fallen within that category. In other words, if you had two years of service, you would have gotten past the point where you would get appellate rights as an accepted service employee. But I want to make it clear that in 1985, that wasn't the case. In 1985, if you were in accepted service, you didn't have appeal rights, unless I believe you were preference eligible, which she was not. So I don't want to get hung up on that. But I do want to emphasize that all that that memorandum did was to tell her she was in accepted service. She did not understand that she was losing appellate rights. Let me go back to this point. I have to confess. I'm a little confused. You're saying that if she had been transferred in 1991, we wouldn't have this problem. She would clearly have MSPB appeal rights. I believe so, Your Honor. That's correct. Okay, well, we'll see what the government has to say about that. But that wasn't my understanding of the posture of the case. But go ahead. We can resolve that. All right, go ahead. I think the point that I'm making is this is federal sector employment law. It's not something that a lay person necessarily would understand. And in my client's case, she did not understand. Simply telling an employee you're in accepted service is not enough to inform the employee that she is losing appeal rights to the MSPB. Now, if she came in to the job off the street or from a private employment and was advised that she was now joining the accepted service, there wouldn't be any problem with that. The fact that it didn't say, and by the way, you don't have the rights that people in your corridor have if they're in the competitive service, right? Right, because if I understand your question correctly, if she came in off the street, she would have had no preexisting appeal rights. She would have come into a position without them, so we wouldn't be here if that were the case. Right. But what does it mean for her to have had appeal rights that you contend she never waived, but now she's in a position which, assuming we disagree with your point on the intelligence exception, she's in a position that is in an intelligence designated group and has no appeal right. And there's a reason why employees in those kinds of sensitive positions do not have appeal rights. There's a sensitivity, a security issue that overrides that point. So what does it mean to say that she has retained appeal rights and she would appeal from a position that, because of intelligence concerns, doesn't have appeal rights? Well, the issues are intertwined, Your Honor, in the sense of the directive did not cite the statute, did not indicate in any way, shape, or form. Yeah, I'm assuming we disagree with you and that the position is an intelligence designated position that does not itself possess appeal rights. Right. Well, again, it's the same principle. Isn't there a tension there to say that, well, because she had an appeal right in 1985 that she really never waived, she carries that around with her and she carried it from job to job. She now winds up in a job that is sensitive from an intelligence standpoint and has no appeal rights, but nonetheless, she has a right to appeal. That doesn't make a whole lot of sense. She does have the right to appeal unless she's told expressly that she's losing the right. Otherwise, there's a fundamental fairness problem. So she has, according to your view, she has a right to appeal from a position that no one else in that division would have a right to appeal from. Yes, if she's not told that she's lost her appeal rights, then she possesses that right to appeal. Again, I want to emphasize that there's a notice issue with the directive. I don't want to confuse the two issues. I'm talking about the waiver issue. The DOD directive gives no notice to her whatsoever or to anybody that appeal rights are being taken away from employees in the ONI. And that's another issue, and that's related to the waiver issue. There just isn't any notice. This court in Sarkowsky alluded to or sort of discussed very briefly the fact that the statute had to be cited and had to be in a relatively public document so that there was some notice to employees. And there wasn't any, and that's another problem with this. Mr. Melody, your time has expired, but we will restore an opportunity for some rebuttal. Why don't we hear from the government now? Thank you, Your Honor. Thank you. Let's see, who will be going first? Ms. Friedman. Right. So you're with the board, and then the intervener will be second, and I think, Ms. Stanford, you're taking five minutes, is that correct? And the board will take ten? Yes. Very well. May it please the court. Thank you. Ms. Rice may have appeal rights to repeal her removal under ONI's Administrative Grievance Procedures and its Naval Discrimination Complaint System. Internal. Yes. The internal rights, the basic due process internal rights, right? Right. But she does not have appeal rights to the board because she is not an employee under 5 U.S.C. 7511 v. 8. Let's get something straight right at the outset that I was confused by, and it just may be that I haven't dug deep enough to sort this out. But Mr. Malahy said that she and anyone else, if I understood what he was saying, anybody else with two years in the position would, post-1990, have appeal rights to the board. Is that correct? Not in the position that she's in because she is at ONI, which has been designated by the Secretary of Defense's lawful delegate as a component that does intelligence functions. Right. But if she was not an employee at ONI, under the changes made in 1990 law, she would still have the appeal rights if she fulfilled all those requirements but for the ONI employment. Right, if she was in a different position in the accepted service. But unfortunately for her, she's in a position that is excluded under 7511 v. 8 because she is in a position that's been designated as an intelligence functioning unit. But it's not because she's in the accepted service as such. Correct. There's a little bit of a disconnect here because the notification that she signed at 859 refers to the transfer to the accepted service. But what we're saying now is, well, it's a little more than that. It wasn't just the transfer to the accepted service. It was the transfer to a particular unit within the accepted service, which has even fewer rights than somebody who is generally in the accepted service. Is that fair to say? That's fair to say. So one then could ask whether that form that she signed was really a correct description of the change that she was undergoing. When she signed the form in 1985, it was a correct notice. Correct in the sense that people in the accepted service had no appeal rights. Right. The only people in the accepted service at the time that had appeal rights were preference eligibles. And she is a non-preference eligible, so she would not have had rights. So we get into the EXIM issue, which is a board rule instituted by board case law. And that rule concerns when somebody switches from one job to another job, and the agency has reason to believe that the employee is acting under an erroneous assumption. And in this case— What's the difference between an employee moving from competitive service with appeal rights to accepted service with no appeal rights, the only notice being you're moving from the competitive service to the accepted service, and in EXIM, moving from a position, a full-time position, to a part-time position, where in that case, because there was no notice that moving from full-time to part-time resulted in a loss of appeal rights, that those appeal rights were retained. In both cases, I think you can make the argument that, well, somebody would have been on notice. Moving from competitive to accepted, you would say, well, it's generally well known that there's a difference. And the difference is—one of the differences is appeal rights. I think it's reasonable to say that most people would think moving from a full-time position to a part-time position results in a difference. And when you move from full-time to part-time, you lose a lot of rights. And one of those rights might be the right to accrue this, that, or the other, and perhaps a right of appeal. It seems to me that there are some very close parallels there. Well, there are differences, too. In 1985, the competitive service employees generally had no appeal rights. In 1985, accepted service employees generally didn't have appeal rights. Accepted service employees did not, but competitive service employees did. And so when Ms. Rice signed this acceptance form where she voluntarily went from a competitive service position to an accepted service position, she said in that form, I voluntarily give up my competitive rights. That would have made any reasonable person ask, well, what does this mean? The Exum rule is based on the relative positions. Just let me interrupt you for a second. The form she signed said, I volunteer to be separated from the competitive service. Exactly. It doesn't say, I voluntarily give up my rights in the competitive service. But the Exum rule is based on what the parties should have known at the time. And in the Exum case, this was a situation where the employee was going from a full-time job to a part-time job in the very position that she was working in. And it was supposed to be just a temporary time that she would be doing these temporary part-time jobs. And so she had absolutely no notice from the agency that anything was happening. My impression of the way the board in Exum characterized the rule was a little different, maybe not terribly different from the way you're characterizing it. But my understanding was that the board was emphasizing was that there were indications that should have put the agency on notice, that she actually had a misapprehension and that she thought that there was no significant change, and that in that situation, there was an obligation to correct what was an apparent misapprehension on her part, as opposed to what I take it to be a somewhat broader characterization that you're giving it, or am I not correctly interpreting your characterization of Exum? No, I think I thought that I was communicating what you just said. Oh, okay. Well, in other words, there has to be, as I take it, for the Exum rule to be triggered, some indication coming from the particular employee that the particular employee is operating under a misconception. Absolutely right. All right. So that in subsequent Exum cases like Parks, where somebody's moving from one agency to another agency, there's no expectation that the second agency should tell her that, oh, by the way, you're giving up appeal rights, because the employee is in the better position to know what her appeal rights are. Now, waiver is conceptually different, because in the personnel, in the federal personnel arena, waiver usually is about the agreement between an agency and the employee to give up a known right in the position that the employee is in, so that that employee can continue working in that position. Here, that's not what is at issue. This is a case, a board rule made up by case law, so that the employee moving from a position to position under a fundamental fairness type of rationale would be given all the information that the agency thinks the employee ought to know, if the agency doesn't think that the employee knows the information. So waiver is sort of like a red herring in this case, and it really has no applicability. How does the board deal with cases like Exum where, because of the notice from the waiver problem, that an employee that once had appeal rights is deemed to have retained those appeal rights, even though she's in a different position that normally would not have appeal rights? So you have an employee that is now appealing from an action from a position where there would normally not be an appeal right. How does the board deal with that? Well, in the Exum case, the board remanded it to learn whether Ms. Exum would have accepted the case, would have accepted the position, had she known she was going to give up her appeal rights. And then the board went on to say that if her answer was that she wouldn't have given up her position, the merits of the case could have then been heard. So the question would be, would we go back 20 years, plus all the promotions she's had in the accepted service, and remanded to find out, would she have accepted this job? It would be difficult to say, well, we'll consider it as if she never really accepted any of these jobs and put her back to where she was 20 years ago. Exactly. A little odd. Schedule A people, as opposed to Schedule C, are in a different position, I take it, from the accepted service, correct? Well, Schedule A is a type of appointment where the person is deemed to be working in an intelligence... Well, it's not limited to intelligence. Right. But in this case, it is. For example, a special assistant to the Secretary of Defense would be Schedule A, right? And basically, no rights at all, I take it. No appeal rights, you're fired, you're employed at will. You can be told, leave, and my understanding is you don't even have internal due process rights, correct? Is that accurate? Well, sometimes it depends on the agency. Okay, but I mean, it's a matter of statute. You don't have the rules, even the internal due process statutory protections don't apply to Schedule A, right? Generally. All right, all right. But that is a different category altogether. I take it from accepted service, which is a much broader category, if I understand the way it works. Okay. We'll hear next from Ms. Stenderberg. Thank you. Thank you. May I please have a question? There can be no question that the Office of Naval Intelligence was properly designated by the Secretary, the Assistant Secretary of Defense, as a defense intelligence component of the Navy, such that employees of it are, fit the definition, meet the exception, excuse me, meet the exception under 7511B8 as employees who do not have appeal rights to the Maritime Protection Board under 7511A. But there is no reference in that particular directive to 7511A. And there's no requirement that there be any such reference. What about our Zarkowski case? Well, Zarkowski relied on a different statute that specifically said you must have a presidential exemption intending to create an exemption in this particular case for this particular statute. All 7511 says is that anything that has been designated by the Secretary of Defense as a defense intelligence component, employees of that entity are exempt under 7511B8. The discussion of that in Zarkowski, there's a specific reference. It specifically references the statute. It's on page. Well, I understand it's a different statute. Right. But the specific, the language in the statute is different. And it requires that there be some specific intent in order to exempt an agency's employees. There had to be a particular designation that the entity it worked for had its principal function as an intelligence-gathering entity. And for this purpose, that's my reading of Zarkowski. And in this case, 7511 really says anything that's previously been designated, anything that happens to have been designated by the Secretary of Defense or his designee,  Actually, and this may be pertinent to Mr. Melley's argument, but it doesn't say has been designated. It says is designated. And I think Mr. Melley's argument is that it wasn't designated after the fact of the enactment of the statute that required the designation. Well, I think that's cutting things a little finely, Your Honor. It is. I think he would agree with you that that's a highly technical argument. But technical arguments in this area are not necessarily losing arguments. But there's no authority to support that interpretation. The fact of the matter is that it is designated. It still meets the specific language of 7511B8. It is designated in DOJ Directive 5240.1. It is the one that was in effect in 1988 and all subsequent iterations of that directive. One would have to be willfully obtuse to read 5240.1 and conclude that somehow the Office of Naval Intelligence was not designated or is not designated, is not considered by the Secretary of the Defense. So it's essentially an ongoing designation. The directive, for grammatical purposes, continues to be a designation until it's revoked. That's correct. Okay. That's correct. And because that's the case, there's no question that Ms. Rice works for the Office of Naval Intelligence. She doesn't deny that she works there. And she cannot deny that it is, has been, and has the ongoing distinction of being designated by the Secretary of Defense as an intelligence component of the Department of Defense, therefore meeting the definition of 7511B8, excluding her from the category of employees who have rights of appeal for adverse personnel decisions to the Merit System Protection Board. And, therefore, her case is excluded from the jurisdiction of the Merit System Protection Board as the board properly found. But for purposes of fairness to the employee, why can't the designation be including a reference to the statutory requirement? It could be, Your Honor. But there's no requirement that it be. And the appellant has not identified any such requirement. And for whatever reason, there's no – for whatever reason, Congress didn't see fit specifically to require that. And there's no basis for this court to read into such a narrow, specific designation when the statute in 7511B8 does not require that. And to say that it would be somehow more fair to an employee suggests that the employee would be off reading the United States Code, which I think is a little bit unrealistic. Well, isn't there an imputation that there's a reference to the code indirectly and there's an acknowledgment that everybody is on notice that those statutes would apply? I suspect, Your Honor, that it's much more likely that the employees would be in a position to read the DOD directives because those might actually be relevant because they contain other information. The directive has other purposes other than designating – the purpose of the directive is to explain certain functions and the responsibilities and how those entities are to be run and operated. I think you have to be a little careful about arguing too vigorously that no one should be expected to read the U.S. Code. Because in the other part of the case, dealing with the effect of telling somebody that they're no longer in the competitive service and they've moved to the accepted service, the implication seems to be, well, everybody would know that distinction, which only, I think, a student of the personnel laws would really understand all the implications. That may be, Your Honor, but Judge Pujasa's question was, wouldn't it be more fair if there were a specific reference to the statute? My point is that I don't think it would make any difference if they would read it or not read it, whether the reference is there or not. Okay. Very well. Thank you. Thank you. Mr. Melley, we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Your Honor, I want to emphasize that there is a difference between the two statutes. And really, I mean, what it comes down to is comparing 1614 to 2302. The Sarkowski statute. Yeah. Yeah. Correct. The Sarkowski statute. The Sarkowski statute says, as determined by the president, any executive agency or unit thereof, the principal function of which is the conduct of foreign intelligence and counterintelligence activities. And the president basically had to determine whether it was the principal function of a unit to conduct these activities. And this court said that that involved discretion. And that involved discretion in terms of drawing the jurisdictional boundaries of the MSPB and exempting certain employees and not. And there had to be a specific exercise. The 1614.2 has broader discretion in its language. It says, any other component of the Department of Defense that performs intelligence functions. That's the operative language. Performs intelligence functions and is designated by the Secretary of Defense as an intelligence component. Now, having principal functions and just performing intelligence functions, it could be any amount. It could be 1% intelligence functions. So, basically, the Secretary of Defense has to look at any agency that's performing some intelligence functions, maybe 1% intelligence functions. And then exercise discretion to exempt that agency from MSPB appeals or a unit of that agency. And that simply wasn't done. And your honors can see in the record that there's a 2007 directive, which essentially rescinds 5240.01 and then refers back to a 2005 directive, which lists the intelligence components but doesn't list O&I. It just seems to me that there was no formal designation going on here. And court's indulgence. Unless the court has further questions, that concludes my argument. Thank you. I ask that you reverse and remand the case. Thank you, Mr. Malley, and thanks for all counsel. Case is submitted.